UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION



FILED
SEP 24 2009

******************************************************************

| | | |
|---|---|---|
| NORTHERN VALLEY | * | CIV 09-1004 |
| COMMUNICATIONS, LLC, | * | **2009 D.S.D. 11** |
| Plaintiff, | * | OPINION AND ORDER |
| v. | * | |
| QWEST COMMUNICATIONS | * | |
| CORPORATION, | * | |
| Defendant. | * | |

******************************************************************

## KORNMANN, U.S. DISTRICT JUDGE

### INTRODUCTION

[¶1.] Northern Valley filed this diversity action to collect for amounts allegedly due from Qwest for providing originating and terminating telephone access services. Plaintiff alleged claims for breach of contract and breach of implied contract arising out of federal and state tariffs, violation of the Telecommunications Act of 1996 ("the Act" of "the 1996 Act"), 47 U.S.C. §§ 201 and 203, collection action pursuant to state tariff, and unjust enrichment. Plaintiff seeks damages in the amount of $885,051 for amounts claimed to be due from May 1, 2007 to July 1, 2008, interest, attorneys fees, punitive damages, and injunctive relief. Defendant moved (Doc. 16) to dismiss the unjust enrichment claim.

### BACKGROUND

[¶2.] The 1996 Act amended the Communications Act of 1934 to promote "competition and the reduction of regulation in the telecommunications industry, in order to secure lower prices and higher quality services for American telecommunications consumers and to encourage the rapid deployment of new telecommunications technology." Verizon Wireless VAW LLC v. Sahr, 2006 D.S.D. 15, ¶ 10, 457 F.Supp.2nd 940, 944-945 (*citing* Telecommunications Act of 1996, Pub.L. No. 104-104, purpose statement; 110 Stat. 56 (1996)). "Before the Act was passed, incumbent local exchange carriers ["ILECs"] served as the exclusive providers of local telephone

service, which was considered a natural monopoly." Iowa Telecommunications Services, Inc. v. Iowa Utilities Bd., 563 F.3d 743, 745 -746 (8th Cir. 2009). The 1996 Act imposed a duty upon ILECs to provide interconnection with their networks to any requesting telecommunications carrier, including a competing local carrier in the same calling area. *Id.* at 746.

[¶3.] Northern Valley is a competitive local exchange carrier ("CLEC") that offers local telephone service. CLECs are companies that were not the original monopoly telephone company in a specific area at the time of the 1996 Act. Verizon Wireless (VAW) LLC v. Kolbeck, 2007 D.S.D. 30, ¶ 10, 529 F.Supp.2d 1081, 1086. Northern Valley owns the wires which allow telephone calls to be delivered to homes and businesses of its customers.

[¶4.] Qwest, for the purposes of this action, is an interexchange carrier ("IXC") that provides long distance service to its customers. A long distance carrier cannot complete, i.e. deliver, its customer's call by itself. Its customer's local exchange carrier ("LEC") has to originate the call and the LEC, for the intended call recipient, must terminate the call. The long distance carrier pays both LECs "access compensation" for the use of their equipment and services in connecting and terminating the call. *See* Alma Communications Co. v. Missouri Public Service Com'n, 490 F.3d 619, 621 (8th Cir. 2007).[1]

[¶5.] Northern Valley provides "terminating switched access service" to Qwest to enable Qwest to deliver its customers' long distance calls to Northern Valley's customers. "Termination" is the "switching of the telecommunications traffic at the terminating carrier's end office switch, or equivalent facility, and delivery of such traffic to the called party's premises." 47 C.F.R. § 51.701(d).

[¶6.] Tariffs are schedules setting forth the terms and conditions of services and rates for common carriers. *See* 47 C.F.R. 61.3(rr). Northern Valley filed tariffs with the Federal Communications Commission ("FCC") (for interstate calls) and the South Dakota Public

---

[1]Local calls between LECs serving the same area are funded by reciprocal compensation agreements between the LECs. Long-distance calls are funded by access compensation. Alma Communications Co. v. Missouri Public Service Com'n, 490 F.3d 619, 621 (8th Cir. 2007).

Utilities Commission ("the PUC") (for intrastate calls) and its access services are therefore governed by the rates set forth in Northern Valley's tariffs. Like a contract,[2] a tariff controls the relationship between the carrier and its customers. Marcus v. AT & T Co., 138 F.3d 46, 56 (2d Cir. 1998).

[¶7.] Though not applicable to the pending motion to dismiss, I would note that this is just one of a number of other cases pending in the District of South Dakota and elsewhere which were filed by CLECs against IXCs alleging failure to pay switched access charges.[3] In each of these cases, the defendant IXCs have alleged that the plaintiff LECs have engaged in "traffic pumping" schemes with various companies offering conference calling services whereby the LECs provide telephone numbers to the conference calling company, the conference calling company advertises free conference calls in an attempt to generate long distance calls through the IXCs to the LEC's number, the LECs bill the IXCs for call termination, and split the profits with the conference calling company as "marketing fees." One of the defenses asserted by the IXCs is that these calls do not "terminate" with an end user in the LEC's network and therefore the switched access services provided by Northern Valley to terminate such calls are not covered by Northern Valley's tariffs and therefore, Northern Valley may not collect from IXCs.

---

[2]Federal tariffs are not mere contracts; they have the force of federal law. MCI Telecommunications Corp. v. Garden State Inv. Corp., 981 F.2d 385, 387 (8th Cir. 1992). Therefore, the district courts have jurisdiction over a claim for amounts claimed to be due under a tariff.

[3]Now pending in this District, in addition to this case, are *Northern Valley Communications, LLC. v. AT&T Corp.*, CIV 09-1003, *Splitrock Properties, Inc. v. Sprint Communications Company, Limited Partnership*, CIV 09-4075, *Sancom, Inc. v. AT&T Corp.*, CIV 08-4211, *Splitrock Properties, Inc. v. Qwest Communications Corporation*, CIV 08-4172, *Northern Valley Communications, LLC v. Sprint Communications Company, Limited Partnership*, CIV 08-1003, *Sancom, Inc. v. Sprint Communications Company, Limited Partnership*, CIV 07-4107, *Northern Valley Communications, Inc. and Sancom, Inc. v. MCI Communications Services, Inc.*, CIV 07-1016 (the plaintiff's claims have all been dismissed - the case is still pending as to counterclaims asserted by MCI against various counterclaim defendants brought in by MCI).

# DECISION

[¶8.] When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the district court must accept the allegations of the complaint as true and must construe them liberally in plaintiffs' favor. Stufflebeam v. Harris, 521 F.3d 884, 886 (8th Cir. 2008), Quinn v. Ocwen Federal Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006), Booker v. City of St. Louis, 309 F.3d 464, 467 (8th Cir. 2002), Duffy v. Landberg, 133 F.3d 1120, 1122 (8th Cir. 1998), Whisman el rel. Whisman v. Rinehart, 119 F.3d 1303, 1308 (8th Cir. 1997), and Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). Dismissal under Fed. R.12(b)(6) is appropriate only when it "appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." Levy v. Ohl, 477 F.3d 988, 991(8th Cir. 2007) (*quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

[¶9.] Fed. R. Civ. P. 8(d) allows parties to plead in the alternative:

> **(2) Alternative Statements of a Claim or Defense.** A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> **(3) Inconsistent Claims or Defenses.** A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d)(2), (3).

[¶10.] The South Dakota Supreme Court has held, however, that:

> [Q]uantum meruit does not provide a basis for recovery when a valid express contract exists between the parties, fixing the rights of each. There is no question but what, where there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise, or [claim] on quantum meruit.

Burch v. Bricker, 724 NW2d 604, 609 -610 (SD 2006) (*quoting* Mooney's, Inc. v. South Dakota Dept. of Transp., 482 NW2d 43, 47 (SD1992) (*quoting in turn* Thurston v. Cedric Sanders Co., 80 S.D. 426, 125 N.W.2d 496, 498 (1963)). In this case, however, Qwest contends that the services provided by Northern Valley do not fall within the terms of the tariffs. Therefore, there is no procedural bar to plaintiff alleging both contract and unjust enrichment claims.

[¶11.] Qwest claims Northern Valley's unjust enrichment claim must be dismissed based upon the filed rate doctrine, also called the filed tariff doctrine. The Communications Act requires every common carrier[4] to file with the FCC schedules, that is, tariffs "showing all charges . . . classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). The United States Supreme Court has recognized that

> These provisions are modeled after similar provisions of the Interstate Commerce Act (ICA) and share its goal of preventing unreasonable and discriminatory charges. Accordingly, the century-old "filed rate doctrine" associated with the ICA tariff provisions applies to the Communications Act as well.

American Tel. and Tel. Co. v. Central Office Telephone, Inc., 524 U.S. 214, 221, 118 S.Ct. 1956, 1962, 141 L.Ed.2d 222 (1998) (internal citations omitted). The Supreme Court described the basic contours of the filed rate doctrine under the ICA:

> Section 203(c) makes it unlawful for a carrier to extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule.
>
> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

AT&T v. Central Office Telephone, 524 U.S. at 221-22, 118 S.Ct. at 1962-63 (quoting Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915)). The filed rate doctrine is strictly applied. AT&T v. Central Office Telephone, 524 U.S. at 223, 118 S.Ct. at 1963.

---

[4]The term "common carrier" or "carrier" means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter . . . 47 U.S.C. § 153(a)(10).

5

[¶12.] The Second Circuit has explained:

> The filed rate doctrine is motivated by two "companion principles" (1) preventing carriers from engaging in price discrimination as between ratepayers (the "nondiscrimination strand") and (2) preserving the exclusive role of federal agencies in approving rates for telecommunications services that are "reasonable" by keeping courts out of the rate-making process (the "nonjusticiability strand"), a function that the federal regulatory agencies are more competent to perform.

Marcus v. AT&T Corp., 138 F.3d 46, 58 (2nd Cir. 1998) (*citing, inter alia* H.J. Inc. v. Northwestern Bell Tel. Co., 954 F.2d 485, 488 (8th Cir. 1992)). *Accord*, Verizon Delaware, Inc. v. Covad Communications Co., 377 F.3d 1081, 1086 (9th Cir. 2004). The doctrine is applied to prevent a cause of action that implicates either the nondiscrimination strand or the nonjusticiability strand. Marcus v. AT&T Corp., 138 F.3d at 59. "[T]he focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations." H.J. v. Northwestern Bell, 954 F.2d at 489. The doctrine does not apply where the claim does "not attack the rate itself" or does " not require the court to 'second-guess' the rate-making agency [here, the FCC]." *Id.* at 490.

[¶13.] AT&T v. Central Office Telephone was a claim brought by a purchaser and reseller of bulk long distance services asserting, inter alia, state-law claims for breach of contract and tortious interference with contractual relations (Central Offices' contracts with its customers) alleging that AT&T had promised and failed to deliver various service, provisioning, and billing options in addition to those set forth in the tariff. The Supreme Court held that Central Office's tortious interference claim was "wholly derivative of the contract claim for additional and better services ... the tort claim was based on AT&T's refusal to provide [Central Office] with certain types of service ... the claims in this case, even the tort claim ... stem from the alleged failure of AT&T to comply with its contractual relationship." American Tel. and Tel. Co. v. Central Office Telephone, Inc., 524 U.S. at 226, 118 S.Ct. at 1964-65. "The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier." *Id.* at 227, 118 S.Ct. at 1965 (*quoting* Keogh v. Chicago & Northwestern R. Co., 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922)). Thus, the Supreme Court held that the filed rate doctrine prohibited Central Office's tort claims against AT&T.

[¶14.] The question here is whether the filed rate doctrine applies with equal force to Northern Valley's tort claim for unjust enrichment because such a claim is "wholly derivative of the contract claim" - i.e., Northern Valley's unjust enrichment claim "stem[s] from the alleged failure of [Qwest] to comply with its contractual relationship." AT&T v. Central Office Telephone, 524 U.S. at 226, 118 S.Ct. at 1964-65. AT&T v. Central Office Telephone was not an action to collect amounts billed under a tariff but was instead an action seeking to enforce additional conditions of delivery promised by the carrier.

[¶15.] In the unjust enrichment claim, Northern Valley seeks to recover from Qwest for the value of switched access services provided during the applicable time period alleged in the complaint. This claim is a "preemptive strike" at IXC claims in other traffic pumping cases that the conference calls which were terminated by the LECs were not covered under the tariffs and therefore could not be billed as tariffed services. If those services are not covered by the tariff, can Northern Valley sue for unjust enrichment to collect the value of those services?

[¶16.] Then Chief Justice Rehnquist, in his concurring opinion in AT&T v. Central Office Telephone, stated:

> As the majority correctly states, the filed rate doctrine exists to protect the "antidiscriminatory policy which lies at 'the heart of the common-carrier section of the Communications Act.'" Ante, at 1963. Central to that antidiscriminatory policy is the notion that all purchasers of services covered by the tariff will pay the same rate. The filed-rate doctrine furthers this policy by disallowing suits brought to enforce agreements to provide services on terms different from those listed in the tariff. This ensures that the tariff governs the terms by which the common carrier provides those services to its customers.
>
> It is crucial to note, however, that this is all the tariff governs. In order for the filed rate doctrine to serve its purpose, therefore, it need pre-empt only those suits that seek to alter the terms and conditions provided for in the tariff.

AT&T v. Central Office Telephone, 524 U.S. at 229, 118 S.Ct. at 1966 (Rehnquist, Chief Justice, concurring).

> The tariff does not govern, however, the entirety of the relationship between the common carrier and its customers. For example, it does not

> affect whatever duties state law might impose on petitioner to refrain from intentionally interfering with respondent's relationships with its customers by means other than failing to honor unenforceable side agreements, or to refrain from engaging in slander or libel, or to satisfy other contractual obligations. The filed rate doctrine's purpose is to ensure that the filed rates are the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff. It does not serve as a shield against all actions based in state law.

*Id.* at 230-31, 118 S.Ct. at 1966-67.

[¶17.] Qwest contends that recovery for switched access services under an unjust enrichment theory would result in Qwest paying a rate different from other IXCs who purchased switched access services from Northern Valley and were charged rates set forth in Northern Valley's tariffs. Qwest contends that such a recovery would violate the antidiscriminatory policy at the heart of the Communications Act and which policy the filed rate doctrine exists to enforce. I do not think this is necessarily true. Northern Valley is required to charge all IXCs the same rate for the same services. The antidiscrimination policy applies to ensure that purchasers of services covered by the tariff will pay the same rate. The policy does not per se extend to services not covered by the tariffs. If the policy does extend to non-tariff services, all that would be required is that Northern Valley provide such call termination services to all IXCs under the same terms and conditions. There is no claim, at this stage of the pleadings, that Northern Valley has failed to do so. In fact, Northern Valley has nearly identical claims pending against IXCs AT&T and Sprint, seeking payment for switched access services.

[¶18.] Qwest contends that Northern Valley is prohibited by the Communications Act from providing services except as set forth in its tariffs. Therefore, Qwest contends, if the termination of conference calls does not fall within the call termination services described in its tariffs, Northern Valley is prohibited from providing the services and, therefore, from charging for such services. Northern Valley cites to In re Hyperion Telecommuncations, Inc., FCC 97-219 (June 19, 1997), a decision of the FCC which held that the 1996 Act established a permissive detariffing policy for nondominant (i.e. CLEC) carriers which permitted, but does not require, such carriers to file tariffs for interstate exchange access services.

[¶19.] Qwest does not challenge Northern Valley's contention but instead argues that, once it files a tariff for switched access services, the tariff governs and Northern Valley cannot claim unjust enrichment. However, since the pleadings were filed in conjunction with the motion to dismiss, Qwest has filed an answer denying that the calls Northern Valley is seeking compensation for are subject to the access tariffs.

[¶20.] Qwest contends that Northern Valley was required to either file tariffs or negotiate contracts with the IXCs for terminating access services and that providing services not covered by either a tariff or a contract prohibits Northern Valley from collecting for such services. Qwest's argument assumes facts not before the Court at this time and is therefore rejected.

[¶21.] In a similar case filed in this District, Chief Judge Schreier granted Qwest's motion to dismiss a CLEC's unjust enrichment claim. Sancon, Inc. v. Qwest Communcations Corporation, ___ F.Supp.2d ___, 2009 WL 1748709 (D.S.D. June 19, 2009). Judge Schreier concluded that

> Under Sancom's alternative theory of recovery, Sancom provided originating and terminating access services that were not covered by its filed tariffs. If Sancom were to prevail on its claim that Qwest would be unjustly enriched if it were allowed to retain the benefit of these services without compensating Sancom, the court would be required to determine the value of the services rendered. Indeed, the FCC has noted that "an award of quantum meruit would require the court to establish a value (i.e., set a rate) for the service provided in the past." *In re Petitions of Sprint PCS and AT & T Corp.*, 17 F.C.C.R. 13192, 13198 n. 40 (2002). The FCC expressed concern that judicial determination of an award for unjust enrichment goes beyond the power of the courts under the Communications Act. *Id.* ("We note that there is a substantial question whether a court may award quantum meruit or other equitable relief under state law without running afoul of section 332(c)(3)(A).")

Sancom v. Qwest, 2009 WL 1748709 at 5.

[¶22.] In another case filed in this District, Judge Piersol also dismissed unjust enrichment and quantum meruit claims under the filed rate doctrine. Splitrock Properties, Inc. v. Qwest Communcations Corporation, 2009 WL 2827901 (D.S.D. August 28, 2009). Judge Piersol reasoned that granting relief for such claims "would have the effect of changing the rate charged for services rendered pursuant to a valid tariff." *Id.* at 2.

9

[¶23.]   Prior to these opinions, both Judges Schreier and Piersol denied motions by CLECs to dismiss the counterclaims filed by the IXCs under the filed rate doctrine. *See* Sancom, Inc. v. Sprint Communications Compnay Limited Partnership, 618 F.Supp.2d 1086 (D.S.D. March 30, 2009), Sancom, Inc. v. Qwest Communications Corporation, CIV. 07-4147-KES, 2008 WL 2627465 (D.S.D. June 26, 2008) and Northern Valley Communications, LLC v. MCI Communications Services, Inc., CIV 07-1016-KES, 2008 WL 2627519 (D.S.D. June 26, 2008). In each of those cases the district court found that the filed rate doctrine did not bar the counterclaims because the IXCs were not challenging the reasonableness of the rates charged by the CLECs, but were instead asserting that the CLECs were billing for services not set forth in the tariff.

[¶24.]   The filed rate doctrine has been called into question based upon the FCC's post 1996 Act "program of deregulation in favor of regulation by the market, supplemented by state-law remedies." *See* Verizon v. Covad, 377 F.3d at 1088, Fax Telecommunicaciones Inc. v. AT & T, 138 F.3d 479, 491 (2nd Cir. 1998) (the filed rate doctrine "is plainly a creature of a different time . . . although the filing requirement prevented price discrimination and unfair practices . . . strict application of the filed rate doctrine frustrates those same goals in today's era of deregulation and multiple competing carriers"). However, to the extent that plaintiff CLECs and defendant IXCs assert claims that either was entitled to a different rate or different services than those set forth in filed tariffs, the courts in this Circuit are bound to follow the filed rate doctrine. Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 680 (8th Cir. 2009).

[¶25.]   Where, as here, it is alleged that the charges as set out in Northern Valley's tariffs do not apply to the type of traffic at issue in this case, the filed rate doctrine would not apply to defeat Northern Valley's unjust enrichment claim. Iowa Network Services, Inc. v. Qwest Corp., 466 F.3d 1091, 1097 (8th Cir. 2006).

[¶26.]   Most of the cases dealing with motions to dismiss under the filed rate doctrine discuss the FCC's ruling in Qwest Communciatons Corp. v. Farmers & Merchants Mutual Telephone Company, Mem. Op. & Order, File Nol EB-07-MD-001, FCC 07-175 (October 2, 2007). In that case, the FCC held that the conference calling companies were "end users" under the relevant tariff and therefore Farmers' charges to Qwest did fall within the terms of Farmers' tariff.

10

However, the FCC granted reconsideration for further development of the record on January 29, 2008. FCC 08-29. The order granting reconsideration was the basis of Judge Piersol's denial of the motion to dismiss on March 20, 2009, in <u>Sancom v. Sprint</u>, *supra*.

[¶27.] Apparently the FCC has not yet filed any opinion on reconsideration in <u>Farmers</u>. Notwithstanding any opinions in other so-called traffic pumping cases, the motion to dismiss Northern Valley's unjust enrichment claim should be denied. It is unclear on the present record whether Northern Valley's conference calling customers are "end users," covered by the tariffs in question. "In the absence of clarity regarding how those services are classified and regulated, it would be premature to address application of the filed rate doctrine to [the parties'] claim[s]." <u>Tekstar Communications, Inc. v. Sprint Communications Co. L.P.</u>, 2009 WL 2155930, 3 (D.Minn. 2009). Further, it is not yet absolutely clear to this Court whether the filed rate doctrine is applicable, given the 1996 Act's "detariffing" policy.

[¶28.] Finally, Qwest contends that Northern Valley has failed to state a claim for unjust enrichment.

> [U]nder South Dakota law, "[u]njust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.'" *Hofedt v. Mehling*, 658 N.W.2d 783, 788 (S.D.2003) (*quoting Parker v. Western Dakota Insurors, Inc.*, 605 N.W.2d 181, 192 (S.D.2000)); *accord Miller v. Jacobsen*, 714 N.W.2d 69, 81 (S.D.2006); *Juttelstad v. Juttelstad*, 587 N.W.2d 447, 451 (S.D.1998); *see Sporleder v. Van Liere*, 569 N.W.2d 8, 12 (S.D.1997); *Randall Stanley Architects, Inc. v. All Saints Community Corp.*, 1996 SD 138, ¶ 20, 555 N.W.2d 802, 805 (S.D.1996). When a claim of unjust enrichment is established, "the law implies a contract obligating the beneficiary to compensate the benefactor for the value of the benefit conferred." *Hofedt*, 658 N.W.2d at 788; *accord Mack v. Mack*, 613 N.W.2d 64, 69 (S.D.2000). In order to establish unjust enrichment, three elements must be proven: (1) a benefit was received; (2) the recipient was cognizant of that benefit; and (3) the retention of the benefit without reimbursement would unjustly enrich the recipient. *Hofedt*, 658 N.W.2d at 788; *Action Mechanical, Inc. v. Deadwood Historic Preservation Comm'n*, 652 N.W.2d 742, 750 (S.D.2002); *Mack*, 613 N.W.2d at 69; *Parker*, 605 N.W.2d at 192; *Juttelstad*, 587 N.W.2d at 451; *Bollinger v. Eldredge*, 524 N.W.2d 118, 122-23 (S.D.1994).

<u>John Morrell & Co. v. Halbur</u>, 2007 WL 3003150, 3 (N.D.Iowa 2007).

[¶29.] A claim for "unjust" enrichment implies illegal or inequitable behavior by Qwest in obtaining the benefits conferred by Northern Valley. Commercial Trust and Sav. Bank v. Christensen, 535 NW2d 853, 858 (SD 1995). Northern Valley has alleged such behavior by Qwest.

[¶30.] It is clear that Qwest, as an IXC, claims to not have chosen to use the services of Northern Valley to complete conference calls for Qwest's customer. Rather, Northern Valley is alleged (in this and in other cases) to pay a marketing fee to another entity to induce Qwest's customers to call a Northern Valley telephone number which results in Qwest's obligation to use Northern Valley's services to terminate the call. There may be serious doubts as to whether Northern Valley could ever prove the element of inequity. However, to survive dismissal, Northern Valley must allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id.

[¶31.] Now, therefore,

[¶32.] IT IS ORDERED that Qwest's motion, Doc. 16, to dismiss the unjust enrichment claim set forth in Count VI of the complaint is denied.

Dated this 24th day of September, 2009.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Barbara J. Paepke
DEPUTY
(SEAL)