FILED
SEP 29 2010

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| NORTHERN VALLEY COMMUNICATIONS, LLC, | \* | CIV 09-1004 |
| Plaintiff, | \* | OPINION AND ORDERS |
| v. | \* | |
| QWEST COMMUNICATIONS CORPORATION, | \* | |
| Defendant, | \* | |
| v. | \*\* | |
| GLOBAL CONFERENCE PARTNERS, LLC, | \* | |
| Involuntary plaintiff. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Before moving to the pending motions, I note that the caption here is something that I have not seen previously while on the bench or during the 30 years I practiced law. A party may be a plaintiff or a defendant. There is no such animal as a "counterclaim plaintiff" or a "counterclaim defendant." If a defendant interposes a counterclaim against the plaintiff, the defendant's name or status does not change. We are not dealing here with a third party plaintiff or a third party defendant, as allowed by the Federal Rules of Civil Procedure. I believe the best description for Global Conference Partners, LLC. is an involuntary plaintiff in which case QWEST may interpose a counterclaim. I should have addressed these matters previously when joining Global as a party. The caption will be hereafter corrected as I have done in this Opinion and Order.

Plaintiff filed a motion (Doc. 96) to stay this matter and refer the case to the Federal Communications Commission ("FCC") for a determination of whether plaintiff is entitled to collect switched access charges under its tariffs for calls to numbers assigned to Global

Conference Partners. Motions to stay and refer were filed in other cases pending in the District of South Dakota, including Sancom v. Sprint, Civ. 07-4107, Sancom v. Qwest, Civ. 07-4147, Northern Valley v. Sprint, Civ. 08-1003, and Sancom v. AT&T, Civ. 08-4211. Judge Schreier granted the motions to stay and refer in each of those cases. Sancom Inc. v. Sprint Communications Co. Ltd. Partnership, 2010 WL 936718 (D.S.D. March 15, 2010), Sancom, Inc. v. Qwest Communications Corp, 2010 WL 960005 (D.S.D. March 12, 2010), Northern Valley Communications, LLC v. Sprint Communications Co. Ltd. Partnership, 2010 WL 936723 (D.S.D. March 15, 2010), and Sancom, Inc. v. AT&T Corp, 696 F.Supp.2d 1030 (D.S.D. March 11, 2010). Judge Schreier ordered the parties in Splitrock v. Sprint, Civ. 09-4075, to brief whether that matter should be stayed and referred. That matter was subsequently stayed and referred. Splitrock Properties, Inc. v. Sprint Communications Co. Ltd. Partnership, 2010 WL 1329634 (D.S.D. March 30, 2010). Judge Schreier ordered the parties in Splitrock v. Qwest, 08-4172, to brief whether that matter should be stayed and referred. That matter was subsequently stayed and referred. Splitrock Properties, Inc. v. Qwest Communications Corp., 2010 WL 2867126 (D.S.D. July 20, 2010).

No motion to stay and refer was filed in the consolidated cases of Northern Valley v. MCI, d/b/a/ Verizon, v. Global Conference Partners and Sancom v. MCI, d/b/a/ Verizon, v. Free Conferencing, Civ. 07-1016, and Judge Schreier did not order the parties to brief the issue in those cases. Northern Valley and MCI, d/b/a Verizon, stipulated to the dismissal of their claims in January 2009. Sancom and MCI, d/b/a Verizon, stipulated to the dismissal of their claims in April 2009. MCI, d/b/a Verizon, and Global Conference Partners stipulated to the dismissal of their claims in March 2010. Thus, 07-1016 is proceeding only as to MCI d/b/a Verizon's claims against Free Conferencing alleging civil conspiracy and aiding and abetting tortious conduct and Free Conferencing claims against MCI d/b/a Verizon alleging tortious interference with business relations and violations of the Communications Act.

Judge Schreier, in her six opinions granting the motions to stay and refer, referred the following issues to the FCC:

> (1) Whether, under the facts of the present dispute between [CLEC] and [IXC], [CLEC] is entitled to collect interstate switched access charges it

2

has billed to [IXC] pursuant to [CLEC]'s interstate access tariff for calls to numbers assigned to free calling providers.

(2) In the event that the services provided by [CLEC] to [IXC], by which calls placed by [IXC]'s customers are delivered to free calling providers served by [CLEC], do not qualify as switched access service under [CLEC]'s applicable interstate access tariff, determination of the proper classification of these services, whether such services are subject to federal tariffing requirements, and whether [CLEC] is entitled to obtain compensation for these services.

(3) In the event that the services provided by [CLEC] to [IXC] do not qualify as switched access service under [CLEC]'s applicable interstate access tariff, but [CLEC] is otherwise entitled to compensation for these services, determination of a reasonable rate for these services.

United States District Judge Joan N. Ericksen issued an opinion in July 2009, staying and referring to the FCC Tekstar Communications, Inc. v. Sprint Communications Company, D. Minn. Civ 08-1130, Doc. 145 (now assigned to Chief Judge Michael J. Davis). Judge Ericksen referred the following issues to the FCC:

a. Whether, under the facts of the present dispute between [IXC] and [CLEC], [CLEC] is entitled to collect interstate switched access charges it has billed to [IXC] pursuant to [CLEC]'s interstate access tariff for calls to numbers assigned to call conferencing companies, chat line providers, and other call connection companies. The Court requests the FCC's consideration with respect to calls billed between November 1, 2005 and the date of this order.

b. In the event that the telecommunication services provided by [CLEC] to [IXC], by which calls placed by [IXC]'s customers are delivered to conference call companies and other call connection companies served by [CLEC], do not qualify as switched exchange access service under [CLEC]'s applicable federal tariff, determination of (1) the proper legal classification of those telecommunication services, (2) whether such services are subject to federal tariffing requirements, and (3) whether [CLEC] must comply with those tariffing requirements as a condition of recovering any compensation for those services.

Tekstar Communications, Inc. v. Sprint, 2009 WL 2155930 at pp. 3-4 (D.Minn. 2009).

Judge Ericksen set forth in her pre-Farmers II order referring issues to the FCC:

The Court further concludes that resolution of the present action would require consideration of matters best entrusted in the first instance to the

3

> FCC's expertise and experience. Determination of whether the services at issue in this case are covered by Tekstar's tariff will require consideration of how those services fit into the larger regulatory regime. In addition, the Court anticipates that review of the myriad factors involved in the process of establishing tariffs will be significant to gauging the scope of Tekstar's tariff, and Sprint contends that Tekstar's tariff should not be construed to cover the services at issue in the present dispute because, among other things, such a tariff would be "contrary . . . to agency policy." Such considerations are more appropriately evaluated after the benefit of input from the FCC.

Id. at p. 2 (internal citations omitted).

Judge Schreier issued her orders referring these matters to the FCC after the FCC issued its opinion in Farmers II. The IXCs argued that the district courts should determine the issues pending in district courts following the guidance provided by Farmers I and II.

Judge Schreier rejected the IXC's suggestion, holding:

> This is essentially a tariff interpretation and enforcement question . . . "Ordinarily, the construction of a tariff is a matter of law for the Court, being no different than the construction of any other written document." But where "'words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application,' . . . the issue should first go to the appropriate administrative agency" . . . Here, application of Sancom's switched access tariff requires interpretation of words used in a technical sense and consideration of extrinsic evidence relating to topics within the expertise of the FCC . . . The import and meaning of the different types of connections provided to different customers is an issue the FCC is more qualified than the court to consider . . . the court finds that *Farmers II* does not provide sufficient guidance to render referral unnecessary. *Farmers II* made clear that the application of the tariff is a fact-specific question. The type of connection and nature of the relationship between Sancom and the free calling providers may differ from the facts of *Farmers II* so that the FCC's expertise is still necessary in this case. Further, many of the details of Farmers' billing practices and conduct were redacted from the FCC's opinion in *Farmers II*, and as a result, the opinion provides the court with the FCC's conclusion rather than the key facts supporting that conclusion. Thus, there remain technical issues on which the FCC has not provided sufficient guidance.

Sancom, Inc. v. AT&T Corp, 696 F.Supp.2d at 1036-38 (internal citations omitted).

A motion to stay and refer to the FCC was also considered in Bluegrass Telephone Co., Inc. v. Qwest Communications Co., LLC, 2010 WL 1257727 (W.D. Ky. March 26, 2010). In Bluegrass v. Qwest, the district court noted:

> The FCC has recognized that so-called "traffic pumping" schemes "manipulate the Commission's rules to achieve a result unintended by the rules," *Qwest Commc'ns Corp. v. Farmers & Merchants Mutual Tel. Co.*, No. EB-07-MD-001, 2007 WL 2872754, (2007), but so far it has not addressed the problem with any regulation.[FN2]
>> FN2. The FCC issued a Notice of Proposed Rulemaking In the Matter of Establishing Just and Reasonable Rates for Local Exchange Carriers back in 2007 but has not acted on it since.
>
> * * *
>
> Nor does it appear that such action will be forthcoming any time soon given that the FCC's Fall 2009 Unified Agenda calls the rulemaking "nonsignificant" and has it set for "long-term action."

Bluegrass v. Qwest, 2010 WL 1257727 at 2. Bluegrass v. Qwest was not referred to the FCC but was instead stayed pending FCC ruling on the pending "traffic pumping" cases because "once the FCC decides the other cases, the law that governs this case should be clear and the Court should simply be able to apply it." Bluegrass v. Qwest, *supra* at 3.

It is distressing that the FCC apparently fails to recognize the national importance of promptly resolving disputes pending across the United States. I encourage them to act with all due dispatch.

Northern Valley asserts that this case should be stayed and certain issues referred to the FCC under the primary jurisdiction doctrine. Global Conference Partners joined in Northern Valley's motion. Qwest resists the motion to stay, contending that the FCC's decision in Farmers II is, in effect, the FCC's interpretation from a primary jurisdiction referral (which interpretation Qwest contends is in Qwest's favor as to the issues in this case) and a second referral is not necessary.

So called "traffic pumping" or "conference calling" cases are pending in multiple jurisdictions which present the same or similar issues. It makes little sense for this court to proceed as to the substantive issues when those very issues have in many cases been stayed and referred to the FCC quite some time ago.

5

Judge Schreier, in her prior opinions staying and referring, found that the FCC's November 2009 Farmers decision does not provide sufficient guidance to render referral unnecessary because the application of each LEC's tariff is a fact-specific question. *See* Sancom, Inc. v. AT&T Corp., 696 F.Supp.2d at 1039. Judge Schreier further found that the FCC's Farmers decision did not set forth many of the details of the LEC's billing practices and conduct and thus Farmers does not provide sufficient guidance as to the application of those facts to the dispute. *Id*.

Judge Schreier set forth in her most recent decision granting a stay and referral of a similar case:

> Because there are currently about two dozen cases pending in federal courts across the country involving the issue of whether the connection of long-distance calls through an LEC's facilities to conference calling companies constitutes "switched access service" under the applicable access tariffs, the court finds that the potential for inconsistent or contradictory rulings on this issue is great.

Splitrock Properties, Inc. v. Qwest Communications Corp., 2010 WL 2867126 at 9 (D.S.D. 2010). I agree.

For the above reasons and the reasons set forth in Judge Schreier's prior opinions, I find that the motion to stay and refer should be granted.

Now, therefore,

IT IS ORDERED:

1. Northern Valley's motion, Doc. 96, to stay and refer issues to the FCC is granted

2. Northern Valley's motion, Doc. 98, for hearing is denied.

3. This matter is stayed pending a decision issued by the FCC on the issues referred below or until a further order of this Court.

4. This matter is referred to the FCC for resolution, to the extent the FCC's jurisdiction permits, of the following issues:

> (1) Whether, under the facts of the present dispute between Northern Valley and Qwest, Northern Valley is entitled to collect interstate switched access charges it has billed to Qwest pursuant to Northern Valley's interstate access tariff for calls to numbers assigned to free calling providers.

(2) In the event that the services provided by Northern Valley to Qwest, by which calls placed by Qwest's customers are delivered to free calling providers served by Northern Valley, do not qualify as switched access service under Northern Valley's applicable interstate access tariff, determination of the proper classification of these services, whether such services are subject to federal tariffing requirements, and whether Northern Valley is entitled to obtain any compensation for these services.

(3) In the event that the services provided by Northern Valley to Qwest do not qualify as switched access service under Northern Valley's applicable interstate access tariff, but Northern Valley is otherwise entitled to compensation for these services, determination of a reasonable rate for these services.

5. Northern Valley shall immediately contact the Market Disputes Resolution Division of the FCC to obtain guidance regarding the appropriate method for bringing this matter before the FCC. Northern Valley shall initiate proceedings as recommended by the Market Disputes Resolution Division within 30 days of the date of this order. Northern Valley is directed to furnish the FCC with a copy of this order as part of its submission.

6. The parties shall submit a joint report to the court every three months describing the status of the proceeding before the FCC, the first of which shall be filed no later than three months from the date of this order.

Dated this 29th day of September, 2010.

BY THE COURT:

Charles B. Kornmann
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Barbara J. Praephe
DEPUTY
(SEAL)